## Patton Township Auditors' Report.

*N. B. Spangler* and *Ivan Walker*, for appellants.

No appearance for the township.

FLEMING, P. J., Aug. 8, 1929.—The Auditors of Patton Township, by their report filed March 31, 1926, have surcharged John W. Hartsock, A. C. Thomas and John W. Blair, the then supervisors of such township, in the sum of $785.30, consisting of two items, to wit: (1) Paid to O. A. Harris for hauling, $175; and (2) paid for township house, $610.30. The supervisors have appealed, and the matter is now before the court.

There is no merit in the surcharge of the item of $175 for hauling. The testimony taken in Com. *v.* Patton Township Supervisors, 13 D. & C. 131 (Court of Quarter Sessions of Centre County), shows that the supervisors employed O. A. Harris to haul ashes or cinders from Scotia to various parts of the township, in some cases the distance being ten or eleven miles. There was some criticism of the action of the supervisors in this respect, it being contended that such ashes or cinders were not proper for road repairs and that stone should have been used, instead, the haul of the stone being for a shorter distance. There is no evidence, however, showing that the use of these ashes and the employment of Mr. Harris was a gross abuse of discretion on the part of the supervisors. On the other hand, it was testified that ashes or cinders, such as were used by the supervisors, were approved by the State Highway Department in similar cases. The source of supply was Scotia and Mr. Harris was geographically situated so as to haul them. There is ample

evidence that a full day's work was done and that the township received full value for the money expended.

The second and most important item is the item of $610.30, dealing with the erection of the township house. Sections 1220 and 1221 of the Act of Assembly approved July 14, 1917, P. L. 943, provide as follows:

"Section 1220. The commissioners or supervisors of townships of the first and second class may procure a suitable lot of ground, and erect a suitable building . thereon for a town-house in which to hold elections, store road machinery, hold meetings of township officers, and for other township uses.

"Section 1221. For the purpose of procuring a lot of ground and erecting a building thereon, as provided in the preceding section of this act, the commissioners or supervisors may borrow money at a rate of interest not exceeding six per centum and issue bonds therefor. The total indebtedness incurred by any township for such purpose shall not exceed one-half of one per centum of the assessed value of real estate of the township."

Section 1221, above, was amended by section 3 of the Act of May 16, 1921, P. L. 575, 578, to read as follows:

"Section 1221. For the purpose of procuring a lot of ground and erecting a building thereon, as provided in the preceding section of this act, the commissioners or supervisors may borrow money at a rate of interest not exceeding six per centum and issue bonds therefor."

In providing for the financing of the road fund, the Act of July 14, 1917, P. L. 887, says:

"Section 421. The board of township supervisors may levy taxes upon all property, and upon all .occupations within the township, made taxable for township purposes, as ascertained by the last adjusted valuation for county purposes, for the purposes and at the rates hereinafter specified, to wit:

"I. An annual road tax, not later than the fourth Monday of March of each year, not exceeding ten mills, unless the board of supervisors by unanimous action shall, upon due cause shown, petition the Court of Quarter Sessions; in which case the Court may order a greater rate than ten mills, but not exceeding ten additional mills, to be levied. All road taxes shall be collected in cash.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"IV. An annual tax so long as necessary, not exceeding fifty per centum of the rate of assessment for road purposes, for the purpose of procuring a lot and erecting a building thereon for a town-house, and for the payment of indebtedness incurred in connection therewith."

Section 421 is amended by the Act of May 16, 1921, P. L. 575, 577, which adds a proviso to subdivision IV as follows: "Provided, the total indebtedness for the payment of which any such tax shall be levied shall not exceed one-half of one per centum of the assessed value of real estate in the township."

It is to be noted that this last-named amendment is the same provision which was removed from section 1221 by the amending Act of 1921. Counsel for the auditors cites for our consideration the sections pertaining to the collection of taxes and the payment of compensation to the tax collector. These sections are as follows:

"Section 423. The township supervisors shall make or cause a duplicate to be made designating the amount of road tax levied against each taxpayer of the township, and also duplicates for all other taxes levied and assessed under the provisions of this article, and shall deliver the same to the township collector, together with a warrant for the collection of the same, which taxes shall be collected as follows, namely: To all taxpayers who pay their

taxes to the collector before June first of each year, an abatement of five per centum shall be made. All road taxes paid to the collector between June first and October first of each year shall be paid in full; and to all road taxes remaining unpaid on the first of October, in each year, the collector shall add five per centum as penalty for such delinquency, and shall collect said penalty in addition to the tax levied, said penalty to be his compensation for collecting said delinquent taxes."

This section has been amended by Act of April 30, 1925, P. L. 412, to read as follows:

"Section 423. The township supervisors shall make or cause a duplicate to be made designating the amount of road tax levied against each taxpayer of the township, and also duplicates for all other taxes levied and assessed under the provisions of this article, and shall deliver the same to the township collector, together with a warrant for the collection of the same, which taxes shall be collected as follows, namely: To all taxpayers who pay their taxes to the collector before June first of each year, an abatement of five per centum shall be made. All road taxes paid to the collector between June first and October first of each year shall be paid in full; and to all road taxes remaining unpaid on the first of October, in each year, the collector shall add five per centum as penalty for such delinquency, and shall collect said penalty in addition to the tax levied."

Section 427 of the Act of July 14, 1917, P. L. 840, reads as follows:

"Section 427. The compensation of the tax collector shall be two per centum on all general road taxes collected prior to the first day of June of each year, and five per centum on all such taxes collected between the first day of June and the first day of October. For the collection of road taxes collected after the first day of October the collector shall receive the penalty added to such taxes, as provided in section four hundred and twenty-three of this act. For the collection of special road taxes and all township taxes other than general road taxes, his compensation shall be five per centum of the amount collected."

This section is amended by the Act of June 29, 1923, P. L. 916, 918, to read as follows:

"Section 427. The compensation of the tax collector shall be two per centum on all general road taxes collected during the period a discount is allowed, and five per centum on all such taxes collected thereafter. For the collection of special road taxes and all township taxes other than general road taxes, his compensation shall be five per centum of the amount collected."

Counsel for the auditors admit the statutory powers conferred upon the supervisors of townships of the second class, empowering them to procure a suitable lot of ground and to erect a suitable building thereon for a town-house, in which to hold elections, store road machinery, hold meetings of township officers, and for other township uses. With their further contention that these powers must be exercised in accordance with the statutory provisions conferring them we fully concur, and we have no doubt counsel for the supervisors likewise concur. It also appears that there is no contention that the cost of the town-house in question, and for which the supervisors have been surcharged, is in excess of one-half of 1 per centum of the assessed value of real estate in the township. But what are the other statutory provisions? It is here that the point of variance occurs.

The auditors contend that the provisions of section 1221 of the Act of July 14, 1917, P. L. 943, as amended by section 3 of the Act of May 16, 1921, P. L. 575, 578, make it mandatory upon the supervisors, when they elect to

build such town-house, to borrow money at a rate not exceeding 6 per centum and to issue bonds therefor. It is further contended that section 421, subsection IV of the Act of July 14, 1917, P. L. 943, as amended by the Act of May 16, 1921, P. L. 575, 577, further makes it mandatory upon such supervisors to levy a special annual tax not exceeding 50 per centum of the rate of assessment for road purposes, in order to retire the bonds and to provide for the interest and other charges accruing from such bond issue. In other words, we view the contention of the auditors to be that, notwithstanding any sufficiency or surplus in the general road funds, the supervisors cannot use such moneys for the erection of a town-house, but that they are compelled, under the statute, to borrow the necessary money, issue bonds therefor and to levy an annual tax to care for the retirement of these bonds and the payment of interest and other charges thereon.

In considering the validity of this contention, we must note that both section 1221 and section 421 involve the use of the permissive word "may;" that is to say, the supervisors "may" borrow such money and issue bonds therefor and "may" levy the special tax in question. Is this word to be interpreted in a mandatory sense or does it involve merely the discretion of the supervisors? This is an important question to be considered at this point in our discussion. If it is mandatory, then, the supervisors not having complied with such mandate, the surcharge should be permitted to stand. On the other hand, if it involves merely a discretion on the part of the supervisors, and there has been no gross abuse of this discretion, it must be concluded that they have not offended against any statutory provision and the surcharge should not be allowed.

There is a marked distinction between a discretion to exercise a power and a discretion to determine only whether the occasion for it has arisen. Such a distinction must be drawn here. The legislature, recognizing the need for such a town-house, empowered the supervisors to build such a building. The erection of any structure involves the expenditure of money. Money, among municipal corporations, springs from the taxpayer. While generally it is found that a deficit exists, or that all the worth-while objects cannot be attained with the funds available, yet it sometimes occurs that a surplus exists, or, by the practice of economy and the exercise of good business judgment, certain desirable things can be obtained for the public. Special taxation, from a standpoint of public policy, should always be avoided if possible. Special taxation should be resorted to only when the benefits to be received therefrom outweigh the burden upon the citizen. We feel that these conclusions are so universally accepted as correct that it is reasonable to infer that the legislature, in enacting section 421, subsection IV, did not intend to make it mandatory that when every town-house was built the supervisors should borrow the money to pay for the land upon which it was built, and for the cost of its erection. The use of the word "may" in the sections under consideration did not confer upon the supervisors a discretion as to whether or not they should exercise the powers therein provided for in the event they had decided to build a town-house, but it did confer the right to determine whether the occasion for their use had arisen. We find nothing in the law which holds that the funds received from taxes levied and assessed for general road purposes cannot be used for such purposes if found sufficient. The town-house contemplated by the act was an incident to proper road administration in the township. It provided a place where township meetings could be held. It had in mind the protection of township property, especially that property used in the care of the roads. It considered the use of such

building for "all township purposes." The building of such a town-house is included, therefore, in "general road purposes," and the general road tax is a fund from which payment can be made for such building if sufficient moneys exist to pay for the same without impairing the efficiency of road repair. The legislature by its use of the word "may" vested in the supervisors the discretion as to whether such funds did exist in the general road fund. If, in the proper exercise of their discretion, they decided that a town-house could be erected from the general fund, there was no mandate which compelled them to borrow the money, issue bonds and levy a special tax.

Endlich on the Interpretation of Statutes, § 311, page 425, in speaking of this distinction between a discretion to exercise a power and a discretion to determine only whether the occasion for it has arisen, says that it is "illustrated by the construction of the enactment that justices may, if they think fit, issue a summons upon an information laid before them. This power is so far discretionary that they may grant or refuse the summons according as they judge, in the honest exercise of their discretion, that a *prima facie* credible case is shown for it; but its exercise is imperative in the sense that if their opinion is that such a case is shown, it is not competent to them to refuse to exercise it on extraneous grounds, such as that the prosecution is inadvisable."

Further, in Endlich on the Interpretation of Statutes, § 311, page 426, we find: "In one sense, indeed, a power is never obligatory when the discretion of its depository is left to determine whether the occasion for its exercise has arisen; for a superior court can only require him to exercise his discretion, but cannot direct how he shall exercise it."

Counsel for the auditors contend that because section 427 of the Act of July 14, 1917, P. L. 840, as amended by the Act of June 29, 1923, P. L. 916, 918, makes a distinction as to the compensation to be received by the tax collector from taxes collected for general road purposes and that for special road taxes collected, there would be a confusion or blending of moneys due the township and that we should, therefore, infer that general road taxes are not available for the purchase of land and the erection thereon of a town-house. The contention that there is no provision for a delinquent penalty to be added in the case of special taxes is also cited as a reason why general road taxes cannot be used for the purposes now under consideration.

Section 421 provides for "an annual road tax." The act does not specify that every dollar of this tax shall be used in the building or repair of roads. Machinery is needed for such purposes, and there are none who would seriously contend that the supervisors had no power to use the general road taxes for the purchase of equipment. If supervisors can expend money from general road taxes for equipment, they can spend like moneys for a place in which to house such equipment. In the administration of road affairs records must be kept, and there are none who would seriously contend that the supervisors could not purchase a minute book, stationery and supplies for the keeping of such records. If supervisors can expend money from general road taxes for such record-keeping and administrative supplies, they can spend like moneys for a place in which to meet and take the proper corporate action which is to be embodied in such records. "An annual road tax" is provided for in section 421, which moneys are to provide, if sufficient, for the general needs of the township road district.

Section 423 of the Act of 1917, *supra,* directs the making of a road duplicate as well as duplicates for all other taxes levied and assessed under the provisions of the article of which section 423 is a part. This alone presents no unusual circumstance. Municipalities have long since levied taxes for their

138

general purposes, for light, for water, for sinking funds and for many other purposes specifically authorized by law. While the word duplicate is used in a singular sense, the fact remains that one book contains the particular amount levied and assessed against each taxable for each separate purpose. The one book is delivered to the tax collector with the warrants from each taxing authority and the sums paid to the collector are receipted for *in toto*, each item being separately set forth on his receipt and a separate record thereof kept by him.

Section 423, *supra*, originally provided that when road taxes became delinquent a penalty of 5 per centum should be added—we pause here long enough to comment on the fact that the use of the word "road taxes" at the conclusion of section 423, as originally enacted and as found in the section as amended, may as aptly be construed to mean all taxes levied and assessed by the road district and to include special as well as general taxes, as well as to include merely the general road taxes. We need not, however, pass upon such question here—and that the 5 per centum penalty should be the tax collector's compensation for collecting said delinquent taxes. The Act of April 30, 1925, P. L. 412, however, in amending section 423, removed the provision that the 5 per cent. penalty should be the tax collector's compensation. This compensation was definitely determined by section 427 of the Act of 1917, as amended by the Act of June 29, 1923, P. L. 916, 918, which fixes the commission of the collector at 2 per centum of all general road taxes collected during the discount period and 5 per cent. thereafter. On special road taxes and all other township taxes the compensation is 5 per centum of the amount collected. We fail to find anything arising from these provisions, as to the collector's compensation, which would lead us to a conclusion that a town-house can be built and paid for by a special tax alone. Any confusion of moneys which would arise would be attributable solely to the collector's failure to properly set forth the items on his remittance or to improper accounting by the supervisors after such moneys have been received. All this can be avoided by ordinary intelligent bookkeeping.

We are, therefore, of the opinion, to summarize our findings, that the legislature, by the several enactments referred to, intended to vest in the supervisors the power to purchase land for and to erect thereon a town-house in which to hold elections, store road machinery, hold meetings of the township officers, and for other township purposes. The discretion as to whether such building be erected was left entirely with the supervisors. Having decided to erect the same, they can be surcharged therefor only when gross abuse of discretion has been shown, and which is not present here, or where it has been shown that they have failed to comply with other statutory provisions. It was not the intent of the legislature to vest a discretion to exercise the powers enumerated in these subsequent statutory provisions, but to vest a discretion to determine when the occasion for the exercise of such powers arose. The supervisors in the instant case, upon their election to build the town-house, determined that there were sufficient moneys in the general road fund with which to pay for the same, and they paid for it in such manner. When it was thus paid for there was no occasion to borrow money, issue bonds or to levy a special tax. The power to borrow, the power to issue bonds and the power to levy a special tax not greater than one-half of the general road tax was given these supervisors by the legislature. The use of the word "may" gave them, in addition, the discretion as to whether it was necessary for them to exercise the powers conferred. They determined that it was not necessary, so long as funds were available from the general road fund, and we concur with them

in their decision. It would have been quite unwise to plunge the township into debt and to add extra taxation while there was money on hand with which to pay cash.

That elections have not been held in the town-house erected; that the road machinery has not been stored within it; that meetings of township officers have not been held there, or that it has not been used for other township purposes does not enter into the question of validity of the surcharge here. We have not considered the contentions which have racked Patton Township as to where its elections should be held—such is a collateral matter to be determined when proceedings are properly had. We have not considered the sufficiency or the insufficiency of the structure erected as a town-house—that, too, is a collateral matter. We are concerned here solely with two questions, viz.: (1) Did the supervisors have power to erect a town-house and to acquire land therefor? It is admitted on both sides that such power existed. (2) Did such supervisors comply with the statutory provisions relating to the same? For reasons noted above, we are of the opinion that they have fully complied therewith. Therefore, we must conclude that the supervisors were improperly surcharged with the amount expended for such building, to wit, $610.30.

And now, Aug. 8, 1929, the appeal of the supervisors is sustained and the Auditors of Patton Township are directed to allow the credits claimed by the supervisors and with which they have heretofore been surcharged, to wit, an item of $175 to O. A. Harris for hauling, and an item of $610.30 for money expended in the erection of a town-house. Costs to be paid by appellees.

From S. D. Gettig, Bellefonte, Pa.